Summerville, J.
At trial, the plaintiff, J.S.B. Industries, Inc., (“J.S.B.”), sought to recover damages under a contract for the sale and installation of a commercial oven purchased from the defendant, Bakery Machinery Distributors, Inc. (“BMD”). The plaintiffs complaint alleged fraud and deceit, breach of contract, warranty, misrepresentation and false and deceptive trade practices pursuant to M.G.L.c. 93A
The defendant filed an answer and counterclaim in the amount of twenty-six thousand dollars ($26,000) which was alleged to be the unpaid balance due under the sales contract. The defendant included a second counterclaim for seven thousand, eight hundred dollars ($7,800) as fair and reasonable compensation for additional labor costs incurred as a result of plaintiffs failure to provide two unskilled helpers to assist in the installation of the oven as provided by contract.
After a one day trial, the judge found against the plaintiff as to all its claims and for the defendant on its counterclaim for the outstanding balance due under the sales contact. Defendant’s counterclaim for the additional labor expense was denied.
In the report, the plaintiff appeals from the denial of seven rulings that were properly saved by requests for rulings made prior to argument. The plaintiff has also raised several issues in its brief that are unrelated to the rulings of law reported by the trial judge. A report to the Appellate Division normally requires only consideration of rulings and questions of law made by the trial judge. Eliot v. Warwick Stores, Inc., 329 Mass. 406 (1952). Nevertheless, we shall address the issues raised in the brief insofar as they are related to the findings of the trial judge.
We affirm the denial of all seven rulings on the basis that the requested rulings are inapplicable to the facts found by the trial judge. See, Snyder v. Rosen, 342 Mass. 116, 118 (1961). Accordingly, the report is dismissed.
FACTS
The trial judge made extensive findings of fact based upon the credible evidence which included the following. The parties entered into a contract on January 30, 1989 for the sale and installation of a commercial oven. A four-page written sales contract, including annexed drawings, were attached as exhibits to the judge’s report. The contract was drafted by the defendant and signed by Mr. John Anderson as president of the plaintiff corporation. The oven was described in the contract as a “three-deck, Benini model tunnel oven” designed for the baking of muffins and cakes. The purchase price was stated as two hundred and sixty thousand dollars ($260,000), which included assembly and installation of the oven at *3 plaintiffs place of business. Payment terms required the plaintiff to pay 25% of the purchase price with the signing of the contract, 65% upon notification of shipment, with the remaining 10% payable 30 days after start-up.
The report states that the oven was installed in May, 1989. The remaining 10% balance due after installation, which was the subject of the defendant’s counterclaim, was never paid by the plaintiff.
The plaintiffs claim for breach of contract relates to the heating capacity of the gas burner section of the oven. Plaintiff contends that it bargained for a two-stage burner with a heating capacity of 1,000,000 B.T.U.’s. The report states that the plaintiff, in fact, received a one-stage[1] oven with a heating capacity of 750,000 B.T.U.’s.
The first page of the contract described the oven as:
BMD/Benini Mondail Malic 90 Oven, Model #SC7/240, 3-deck Tunnel Oven (No steam) to be supplied with belting for infeed and discharge conveyor system with One (1) Midco burner-2-stage burner, natural gas fired. Operating range — 1 million BTU’S. (emphasis added).
However, the last page of the contract included a provision that expressly referred to a blueprint drawing of the oven:
BMD is attaching hereto, and making part of this contract a layout drawing #P-79-0-B, which depicts the equipment layout in customer’s bakery. It is understood between the two parties of this contract, that there may be some alterations or changes in drawing due to possible changes in modifications necessary to the building in order to facilitate in this alteration, (emphasis added).
On the basis of this provision, the trial judge found in her report that the blueprint drawing #P-79-0-B was incorporated by reference into the contract. The blueprint drawing #P-79-0-E,[2] included in the report, shows what appears to be the layout of the plaintiff’s work space with diagrams and numeric notations indicating the size and capacities of the various components of the oven. At the left center of the drawing is a line drawn through a square area which depicts the location of the tunnel oven. The notation above the line reads: “Gas, 780,000 B.T.U.’s.” Reading both the contract and the annexed drawing together, the trial judge found the heating capacity required under the contract to be 780,000 B.T.U.’s rather than 1,000,000 B.T.U.’s. On this basis, the trial judge concluded that the plaintiff’s claim of breach amounted to a difference of 30,000 B.T.U.’s — between the 780,000 B.T.U.’s required by the contract and the 750,000 B.T.U. burner received.
Plaintiff claims that it notified the defendant of its dissatisfaction with the heating capacity of the oven by phone as soon as the problem was discovered and that *4 it withheld the remaining $26,000 due under the contract pending a satisfactory-resolution of the issue. However, the trial judge found in her detailed findings that “[the plaintiff] did not complain of the burner’s deficient B.T.U. capacity until six months [after installation] and only after being dunned repeatedly by [the defendant] for the balance due under the contract.”
Finding that the plaintiff did not attempt revocation of acceptance until more than six months after installation of the oven, the judge applied G.L.c. 106, §2-607 (3) (a) to dismiss the plaintiffs claim of breach of contract.
DISCUSSION
We agree with the trial judge that the decisive issue of law in the instant case is the reasonableness of the length of time taken by the plaintiff to revoke acceptance once they discovered, or should have discovered, the non-conformity in the oven purchased from the defendant. G.L.c. 106, §2-607 (3) (a) states:
Where a tender has been accepted the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy!.]
It is clear from the contents of the report that the judge properly instructed herself on the law before making her findings of material fact. Citing P & F Construction Corp. v. Friend Lumber Corp., 31 Mass. App. Ct. 57, (1991), (where notice of rejection of non-conforming prefabricated door units 3-1/2 months after delivery was deemed unreasonable), the judge concluded that the attempted revocation of acceptance of the oven six months after installation was unreasonably late under the circumstances. “Generally, the timeliness of a notice of displeasure with the goods is a question to be determined by the fact finder because whether notice is sufficiently prompt is a function of what was reasonable in the commercial circumstances.” Id., at 59. “Findings of fact are not reviewable by the appellate division.” Croshere v. Regional Restaurant, Inc., 25 Mass. App. Dec. 158, 162 (1963), Hall v. Cataldo, 37 Mass. App. Dec. 55, 59 (1967).
Moreover, the trial judge found in the report that J.S.B.’s president, John Anderson, a commercial baker,
was very familiar with the workings of bakery equipment and was very involved with the planning and installation of the oven and burner in question. The court may reasonably infer that he was aware of the disputed burner’s B.T.U. capacity at the time of its installation in May of 1989 by means of inspection thereof, review of the burner’s documentation, or consultation with the J.S.B.’s tradespeople or service people.
Where the trial judge specifically found that the plaintiff’s rejection of the oven six months after installation was unreasonable under the circumstances, that question was clearly one left to the fact finder. “[W]hether notice is sufficiently prompt is a function of what [is] reasonable under the circumstances.” Axion Corp. v. G.D.C. Leasing Corp., 359 Mass. 474 (1971).
(1.) Incorporation by reference. At its core, the plaintiff’s claim of breach (and all related claims) rests upon the view that the seller was contractually obligated to provide an oven with a minimum heating capacity of 1,000,000 B.T.U.’s. This was not the finding of the trial judge. It appears from the judge’s report and the annexed documents that the heating capacity of the oven required under the contract was fully litigated in the course of the day long trial in this matter. As mentioned above, the provision in the parties written contract relevant to the oven’s heating capacity stated: “Operating Range — 1 million BTU’s.” Clearly the word “range” in this context lent some doubt as to the precise heating capacity required under the contract. It is certainly plausible that such language would imply that either something more or something less than one million B.T.U.’s was within the intention of the parties. ‘Where the meaning of a term of contract does not appear *5 unambiguously from the instrument, its interpretation is a matter for the [fact-finder.]” Gillentine v. McKeand, 426 F.2d 717, 721 (D. Mass. 1970).
It is clear to us that the trial judge properly found that the blueprint drawing #P-79-0-E was incorporated by referencé[3] into the parties contract. It is a well-settled rule of contract interpretation that requires a contract to be construed as a whole. Standard Sanitary Mfg. Co. v. Hartfield, 284 Mass. 540 (1934), Sasinowski v. Boston & M.R.R., 74 F.2d 628, 633 (D. Mass. 1935). Reading both documents together, the trial judge properly determined that the intention of the parties was to enter into a contract for an oven with a heating capacity of 780,000 B.T.U.’s.[4]
(2.) Sufficiency of notice. In its brief, the plaintiff states that the judge was mistaken as to the sufficiency of notice required by a buyer to revoke acceptance under G.L.c. 106, §2-607(3)(a), arguing that they made “repeated phone calls to the seller” in order to resolve this matter prior to their resort to writing. In effect, plaintiff argues that the trial judge mistakenly believed that only written notice of revocation would be sufficient to assert its rights under G.L.c. 106, §2-607. Plaintiff cites Delano Growers Cooperative Winery v. Supreme Wine Co., 393 Mass. 666 (1985), for the proposition that notice of rejection is sufficient if it allows the seller to “infer” that the buyer is asserting its legal rights. Delano Growers, at 674.
Although plaintiff cites a correct statement of law, this argument fails for the reason that it is not based on facts found by the trial judge. The reported evidence shows that the oven was installed in May 1989 and that J.S.B. did not complain of the burner’s deficient B.T.U. capacity until six months later and only after being dunned repeatedly by BMD for the balance due under the contract. There is no appeal from findings of fact. See, G.L.c. 231, §108. An appeal to the appellate division, based solely on the claim that the findings of fact are erroneous, is without merit and cannot be reviewed. Adkins v. Armata, 56 Mass. App. Dec. 50 (1975).
We are unable to find any error of law in the rulings of the trial judge. Accordingly, the report is dismissed and the judgment and award of damages made by the trial judge are affirmed.

The trial judge stated in her report that “[tjhe plaintiff offered no meaningful argument as to any harm in the non-conformity of the one-versus two-stage aspect of the burner.” Plaintiff does not advance any argument on appeal based on this finding.

Plaintiff points out in its brief that an incorrect blueprint drawing was included in the report: the drawing included in the report is identified as #P-79-0-E whereas the drawing referred to in the contract is described as #P-79-0-B. It appears that this is merely a transcription error. In any case, plaintiff has not provided any argument that it was prejudiced by the use of incorrect facts as a result of this discrepancy. It is the responsibility of the party requesting the report to see to it that the report is complete enough to enable the appellate division to determine whether there is prejudicial error. Parsons, Freidman, and Central, Inc. v. Daniels, 37 Mass. App. Dec. 121.

The plaintiff raises the issue in its brief that “the court erred as a matter of law in finding that the blueprint drawing of the oven was in legal fact incorporated by reference as part of the contract for sale of that oven.” We are not persuaded. The plain, ordinary and proper meaning of the contract language: “BMD is attaching hereto, and making part of this contract a layout drawing... ” seems apparent.

The plaintiff also assigns as error the judge’s finding that “the blueprint drawing of the oven represented a legal modification of the sales contract” implicating the statute of frauds. As noted above, the judge found that the blueprint drawing was incorporated by reference into the sales contract and the two documents were read together. Because there is no finding of contract modification in the contents of the report, we do not address this issue. “The appellate division can only deal with such questions of law as appear in the report of the trial judge.” Associated Electric Co. v. E.J. Kelly Co., (1970) 44 Mass. App. Dec. 1.